Before STATE INDUSTRIAL COMMISSION, Respondent.
In the Matter of the Claim of MARY NASTACOS, Widow of, and FRANCIS
NASTACOS and EDWARD .NASTACOS, Children, of LOUIS NASTACOS,
Deceased, Respondents, *v.* STAVROS ORFAN, Appellant.

*Workmen's Compensation Law — injury arising in course of employment —*
*evidence.*

Appeal from an award of the State Industrial Commission, entered in
the office of said Commission October 18, 1920, allowing claims to defend-
ants, a widow and two children.

Award affirmed on the ground that the appellants by raising specific
objections before the State Industrial Commission waived all other questions,
and the injury in the employment was not contested. All concur, except
Van Kirk, J., dissenting with an opinion in which Kiley, J., concurs.

VAN KIRK, J. (dissenting): The employer is the defendant and appellant;
there was no insurance carrier. The employer kept two stores, one at
1390 Broadway, Brooklyn, the other at 920 Broadway, Brooklyn. He
made and sold confectionery, ice cream and soda water and had in each
store the necessary tools and machinery for the making of candies, soda
water and ice cream. Electric power was used for making ice cream. He
had three employees in each store. The deceased was employed as a
salesman of soda water, ice cream and candies, working in the store proper
at 920 Broadway. He was not employed to, and did not, make ice cream,
soda water or candies. The son of deceased, Christopher, testifies that it
was not the duty of deceased to make ice cream, " but the day he cut his
hand the second time he was making ice cream." A reading of his testi-
mony, however, shows that he was simply reciting what he had been told;
that he was not present and did not know from his own knowledge what
happened. At one place in his testimony he says: " We asked him what
was the matter; he says it was only a slight cut." And again, " He told
me what was the trouble." In the affidavit of the employer (part of
the proof of death) he was asked: " Do you know, as a matter of per-
sonal knowledge, that he was accidentally or otherwise injured? A. No.
Q. What are the full particulars as to how, when and where he was so
injured? A. Claimed he cut his hand — did not go to doctor until hand
began to swell — was there and contracted pneumonia according to infor-
mation I have received." In his testimony at the hearing is this: " Q.
Now on January 5th, did you see Mr. Nastacos hurt his finger? A. I
didn't see him injure his finger, but I saw his finger was injured, and he
told me how he did it, and says he cut it with the knife." It does not
appear when, with reference to the cutting of the finger, this conversation
occurred, and it cannot be considered as part of the *res gestæ.* It is hearsay
evidence. (The cut is sometimes spoken of as on his finger, sometimes on
his thumb, and sometimes on his hand; for convenience we shall speak of
the cut as on his finger.) There is evidence that on January 5, 1920, about
a week before the deceased saw a doctor, he had a cut on his finger. When

the employer saw it he told the deceased to put peroxide on it and the deceased replied that "it wasn't much cut." He remained at work a few days and his finger began to swell. Apparently on the eleventh or twelfth of January he remained at home and his employer called to see him and told him to see a doctor. He did see a doctor the twelfth of January and was taken to a hospital. He died the 25th of January, 1920, as a result of bronchial or septic pneumonia. The employment was in a hazardous occupation within groups 27, 31 and 45 of the Workmen's Compensation Law.* Although there was a dispute in the evidence the Commission was justified in finding that the sepsis of the right hand and thumb so lowered his vitality and resisting power that he was predisposed to bronchial pneumonia, and that he contracted the pneumonia of which he died as a result of the sepsis. There is, however, an entire absence of competent proof that the deceased received the cut on his finger during the course of his employment. We have only the testimony of the employer and his son that the deceased said he had cut his finger with a knife, but he did not say how or where. It does not appear that in his work he had any use for a knife, and a cut with a knife may be received at any time or place. It does appear that his employer at some time, apparently about January fifth, saw that his finger was cut, but it does not appear how or by what means it became infected. There is no evidence that, in connection with the selling of candy, or soda water or ice cream, there are elements which would be likely to produce such infection. A cut may become infected in the street, or at home, as well as in a store selling candy, soda water and ice cream. About a week passed between the time the employer saw the cut finger and the time the deceased stopped work and saw a doctor, and some time during this week his hand became swollen on account of infection. The same defects in the attempted proof exist here as existed in the case of *White* v. *American Society for Prevention of Cruelty to Animals* (191 App. Div. 6), discussed by Mr. Justice Cochrane, and the decision in that case is controlling here. No attempt was made to show the nature, or direct cause, of the infection. In the absence of proof bearing upon the subject, the Commission was not justified in presuming or concluding that the infection was received during his employment, when it seems just as probable that he might have received it at another time or place. (*Matter of Eldridge* v. *Endicott, Johnson & Co.*, 228 N. Y. 21.) The award should be reversed and the claim remitted to the State Industrial Commission for further action. Kiley, J., concurs.

* See Workmen's Compensation Law, § 2, groups 27, 34, as amd. by Laws of 1917, chap. 705; Id. § 2, group 45², as added by Laws of 1918, chap. 634.— [REP.